UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON WELSH,<br><br>   *Plaintiff*,<br><br> v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>   *Defendant*. | Civil Action No. 21-1380 (TJK) |

### MEMORANDUM OPINION

Under the Freedom of Information Act, Jason Welsh requested from the Department of State a list of all posts filled by a specific type of U.S. personnel that had international travel restrictions imposed on them. The State Department, after considering records in over six offices and searching several databases, found no such list. Welsh sued the State Department for, among other things, improperly withholding records responsive to his request. The State Department now moves for summary judgment. Because the Court finds there is no genuine dispute of material fact that the State Department's search for responsive records was adequate, the Court will grant that motion.

**I.   Background**

The Court assumes familiarity with its prior Memorandum Opinion and Order, in which the Court dismissed Welsh's due process claim, leaving only his Freedom of Information Act, or FOIA, claim under 5 U.S.C. § 552. *See Welsh v. U.S. Dep't of State*, No. 21-cv-1380 (TJK), 2022 WL 343552 (D.D.C. Feb. 4, 2022). As relevant to the remaining FOIA claim, Welsh submitted a FOIA request to the State Department via email seeking:

> A list of all Department posts that have or had international travel restrictions imposed on U.S. Direct Hire (USDH) personnel, either currently or at any time since

> January 2020.  This list should specify the time period of travel restrictions, identify whether the restrictions were imposed by the local government or the Department, and specify the total number of affected USDH personnel.
>
> For example: U.S. Embassy Manila
>
> - Local government-imposed international travel restrictions: March 15 – May 31, 2020;
> - Department-imposed international travel restrictions: June 1 – November 25, 2020;
> - 276 USDH personnel affected.

ECF No. 23-3 at 12; *see also* SMF ¶¶ 1–2.[1]

Upon receipt of Welsh's request, the State Department's Office of Information Programs and Services ("Information Office") evaluated how to process it.  SMF ¶ 4.  The Information Office determined that, should any records responsive to Welsh's request exist, they would reside with these six offices: (1) the Office of Management Strategy and Solutions; (2) the Bureau of Global Talent Management; (3) the Bureau of Medical Services; (4) the Office of the Executive Director in the Bureau of Consular Affairs; (5) the Directorate of Overseas Citizen Services in the Bureau of Consular Affairs; and (6) the Office of Policy Coordination and Public Affairs in the Bureau of Consular Affairs.  Weetman Decl. ¶¶ 9–11; SMF ¶ 5.  At the same time, the Information

---

[1] In resolving this motion, the Court relies in part on the State Department's Statement of Material Facts as to Which There Is No Genuine Issue.  ECF No. 23-2 ("SMF").  Welsh has not filed a competing "concise statement of genuine issues to which it is contended there exists a genuine issue," so the Court "may assume that facts identified by the moving party in its statement of material facts are admitted."  LCvR 7(h)(1); *see also* Fed. R. Civ. P. 56(e) (2) ("[I]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion.").  The Court also relies on the declarations of: Susan C. Weetman, the Deputy Director of the State Department's Office of Information Programs and Services, ECF No. 23-3 ("Weetman Decl."); and Eric F. Stein, the Deputy Assistant Secretary for the Office of Global Information Systems and the former director of the Office of Information Programs and Services, ECF No. 26-1 ("Stein Decl.").  Reliance on these declarations is proper where, as here, they are "relatively detailed, nonconclusory and not impugned by evidence in the record of bad faith on the part of the agency."  *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith.").

Office determined, no other State Department offices were reasonably likely to have responsive records. Weetman Decl. ¶ 12.

The Information Office instructed each of these six offices to search for records responsive to Welsh's request. Weetman Decl. ¶ 12. None found any. SMF ¶ 6. Except for the Office of Management Strategy and Solutions, each office reported that it either did not maintain "list[s]" like that requested by Welsh or that, given the nature or mission of the office's work, it would not have any responsive records. *Id.* ¶¶ 9–13; *see also* Weetman Decl. ¶¶ 18–28.

The Office of Management Strategy and Solutions, for its part, searched the State Department's Diplomacy Strong database, but that search revealed no fully responsive records. SMF ¶¶ 7–8; Weetman Decl. ¶ 16. More precisely, the Office of Management Strategy and Solutions found no document "organized into a single record containing the exact information sought by [Welsh] in his FOIA request." Weetman Decl. ¶ 16. And it also determined it could not generate a list with the requested information. SMF ¶ 7. The senior analyst in charge of the search, however, still queried Diplomacy Strong for certain categories of information sought by Welsh and created a spreadsheet with a list of travel restrictions that local governments had imposed on State Department posts. Weetman Decl. ¶ 16. This document detailed the posts and countries affected, the authority that imposed each restriction, the number of personnel affected, and the estimated start and end date of each restriction. *Id.* The State Department later made the "discretionary decision" to release this record to Welsh even though it was not directly responsive to his FOIA request. SMF ¶ 8.

The State Department also searched its own electronic records system, the eRecords Archive, which contains all cables, emails, and attachments sent to or from state.gov email addresses. SMF ¶ 15; Weetman Decl. ¶ 29. A lead government information specialist ran a search in the

eRecords Archive for records between January 1, 2020, and April 4, 2021, using the search terms "international travel restriction*" AND ("list" OR "chart") AND ("U.S. Direct Hire" OR "USDH"). *See* SMF ¶ 16; Weetman Decl. ¶ 30; Stein Decl. ¶¶ 5–6. That search returned 3,000 pages of potentially responsive records. SMF ¶ 17. Upon review, however, the State Department determined none were responsive. *Id.*

On March 4, 2022, the State Department notified Welsh that it had found no records responsive to his FOIA request. SMF ¶ 18; ECF No. 23-3 at 17. Even so, on April 26, 2022, the Department released to Welsh the document that the Office of Management Strategy and Solutions had created with some information that would have been contained within a responsive record. SMF ¶ 19; Weetman Decl. ¶¶ 8, 16.

## II.      Legal Standards

The Court must grant a motion for summary judgment "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly," *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And although Welsh has litigated his case pro se, "when faced with a motion for summary judgment, even a pro se plaintiff must comply with the Federal Rules of Civil Procedure and this Court's local rules, including this Court's rules regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief." *Hedrick v. FBI*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). "[A] district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under . . . FOIA." *Roseberry-Andrews v. DHS*, 299 F. Supp. 3d 9, 18 (D.D.C. 2018) (quoting *MacLeod v. DHS*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017)). A district court determining whether an agency has made a sufficient showing may rely on relatively detailed and non-conclusory affidavits provided by that agency. *McGehee*, 697 F.2d at 1102. The presumption of good faith afforded to such affidavits "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d at 1200 (citation omitted).

## III.  Analysis

The State Department has satisfied its burden to show that its search was adequate under FOIA, and it is therefore entitled to summary judgment. The language Welsh used in crafting his FOIA request compels this result, and none of the side issues he tries to inject into this dispute changes that outcome.

To merit summary judgment on a FOIA claim, an agency must show that it "conducted a search reasonably calculated to uncover all relevant documents." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2020) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). An "agency's obligation to search is limited to the four corners of the request." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003). For a court considering a summary-judgment motion, the question is "not the result of the search" but the search's

"adequacy." *Id.*; *see also SafeCard Servs.*, 926 F.2d at 1201 (An adequate search need not "actually uncover[] every document extant.").

"Adequacy 'is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case.'" *Landmark*, 272 F. Supp. 2d at 62 (quoting *Weisberg*, 745 F.2d at 1485). Thus, Courts assessing the adequacy of a search consider whether an agency "sets forth the methodology of the search process; details the agency's rationale in identifying the specific subcomponents with potentially responsive records; indicates the types of searches performed . . . ; lists the various databases searched; and specifies the search terms used." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 139 (D.D.C. 2015); *see also Kilmer v. U.S. Customs & Border Prot.*, No. 17-cv-1566 (CKK), 2021 WL 1946392, at *9 (D.D.C. May 14, 2021) (finding search adequate when agency "conducted multiple searches of its relevant electronic databases" and "explained the scope and contents of the databases searched").

Importantly, FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 142 & n.7 (1980). And "an agency need not conduct research in response to a FOIA request." *Landmark*, 272 F. Supp. 2d at 64. In other words, agencies are not required to "dig out all the information that might exist, in whatever form or place it might be found, and to create a document that answers plaintiff's questions." *Frank v. U.S. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996). Typically, an agency "is not obliged to look beyond the four corners of the request . . . ." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Against this backdrop, the State Department's search for records responsive to Welsh's request was adequate. The State Department began with the six offices the Information Office

identified as reasonably likely to have a responsive list, should any exist. SMF ¶ 5. Welsh does not contend that the State Department should have focused on any other offices. The Information Office tasked each office with searching all files likely containing relevant documents and relied on the "knowledge and expertise" of the employees in each office to determine what files would be responsive, where they would be, and how best to find them. Weetman Decl. ¶¶ 12–13.

Despite their efforts, no office located any list responsive to Welsh's request. SMF ¶ 6. In the main, each office determined that it did not maintain the type of lists Welsh requested. *Id.* ¶¶ 7–13. The Bureau of Global Talent Management stated it does not maintain "list[s] of all Departments posts that have or had international travel restrictions imposed on U.S. Direct Hire (USDH) personnel, either currently or at any time since January 2020." *Id.* ¶ 9. Several other offices explained that they would not have records that would contain even the underlying information Welsh's requested list contemplated. For instance, the Bureau of Medical Services said it would not have responsive records because that office does not impose travel restrictions on USDH personnel—though they searched the Bureau's shared drive anyway. *Id.* ¶ 10. Similarly, the three identified offices in the Bureau of Consular Affairs—the Office of the Executive Director, Directorate of Overseas Citizen Services, and Office of Policy Coordination and Public Affairs—all explained that their missions focused on information other than that covered by Welsh's FOIA request and so determined they would not have any responsive records. *Id.* ¶¶ 11–13. Like the other five offices, the Office of Management Strategy and Solutions concluded it, too, would not have any responsive records. *Id.* ¶ 8. That said, the office ran a search in the Diplomacy Strong database to create a "partially responsive record" that the State Department later released to Welsh. Weetman Decl. ¶ 17. The State Department has thus adequately shown that these six offices' efforts, even if ultimately unfruitful, were adequate under FOIA.

The State Department's search of the eRecords Archive was also adequate. The State Department explained the type of the search conducted, the databases searched, and search terms used. *See Bigwood*, 132 F. Supp. 3d at 139. Welsh sought a very specific type of record—a "list." Weetman Decl. Ex. 1. And he sought a list with very specific information—"all Department posts that have or had international travel restrictions imposed on U.S. Direct Hire (USDH) personnel." *Id.* Cabining its search to this request, the State Department accordingly used the search terms "'international travel restriction*' AND ('list' OR 'chart') AND ('U.S. Direct Hire' OR 'USDH')." SMF ¶ 16; Weetman Decl. ¶ 31. The search yielded over 3,000 pages of records, but none, the State Department determined, were responsive. SMF ¶ 17. This search, the State Department has shown, was adequate as it was "reasonably calculated" to locate responsive records. *See Machado Amadis*, 971 F.3d at 368.

In sum, the State Department engaged in a multi-office effort, explained its search methodologies, identified and searched relevant databases (Diplomacy Strong and eRecords Archive), and provided the search terms used. Under these circumstances, there is no genuine dispute that this process was adequate. *See Bigwood*, 132 F. Supp. 3d at 139; *Kilmer*, 2021 WL 1946392, at *9. That the State Department ultimately found no responsive records does not negate the adequacy of its search. *Landmark*, 272 F. Supp. 2d at 64.

Welsh resists this conclusion for a few reasons, but none carry the day. First, Welsh argues, "Although the Plaintiff's FOIA request specifies *how* the requested information should be provided (in a list format), the Department has creatively interpreted these words to mean that it should *only* provide information which is already in a list format." ECF No. 25 at 3. But as explained above, an "agency's obligation to search is limited to the four corners of the request." *Landmark*, 272 F. Supp. 2d at 64. Here, the plain, uncontested language of Welsh's FOIA request sought a

8

"list." SMF ¶ 2; Weetman Decl. Ex. 1. The State Department then satisfied its obligation to search for such a list by searching for precisely that—a list. SMF ¶ 16; *see also* Stein Decl. ¶ 6 (explaining the lead government information specialist expanded the search to also include "chart[s]").

Welsh also stresses that "the Department has shown that it can, in fact, provide information which is not in a list format," which, he suggests, means the State Department *should* provide such a list even though none exists. *See* ECF No. 25 at 3. But an agency need not "create a document" or "conduct research" in response to a FOIA request. *See Landmark*, 272 F. Supp. 2d at 64. The D.C. Circuit has also explained that if a FOIA request is "not broadly drawn" and instead makes a more "specific inquiry"—as Welsh did here—the responding agency is "bound to read it as drafted, not as either agency officials or [the requester] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). Indeed, requests for information rather than records are not even considered proper FOIA requests. *See Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 103–04 (D.D.C. 2012). The State Department's "discretionary decision" to go beyond its FOIA obligations and create and provide Welsh a document that is partially responsive does not change any of this. *See* SMF ¶ 8.

Next, Welsh challenges two of the search terms the State Department used when searching the eRecords Archive. He first argues that the State Department should not have included the Boolean connector "AND" before "'list' OR 'chart.'" ECF No. 25 at 5. He asserts that this connector "excluded many records which likely contain the information sought" in his request. *Id.* At this stage, Welsh must provide evidentiary support for this conclusion. *SafeCard Servs.*, 926 F.2d at 1200 (determining the plaintiffs cannot rebut presumption of good faith of agency declarations with "purely speculative claims about the existence and discoverability of other documents"); *Hedrick*, 216 F. Supp. 3d at 93 (requiring even pro se plaintiffs to "marshal[] record

9

evidence that establishes each element of his claim for relief"). Thus, he cannot survive summary judgment with his speculative conclusion that the inclusion of the search terms "'list' OR 'chart'" excluded records that "likely contain[ed]" responsive material. *See* ECF No. 25 at 5.

What is more, the State Department has offered evidence affirmatively justifying its search-term decisions. The lead government information specialist who conducted the search of the eRecords Archive "assessed that a responsive record would likely include the word 'list' or 'chart' in the text of the record, the file name, or in an email or cable message transmitting the record." Stein Decl. ¶ 6. Further, the lead government information specialist determined that including the terms "list" or "chart" was "necessary" given that Welsh specifically requested a "list." *Id.* With no evidence offered by Welsh to the contrary, the Court finds it was reasonable for the State Department to use the "AND" connector with the terms "'list' OR 'chart'" when searching for a "list" per Welsh's request. SMF ¶ 2.

Welsh also objects to the State Department using the search term "'U.S. Direct Hire' OR 'USDH,'" because he maintains the State Department should have also included "broader terms" like "employees," "personnel," "Americans," "U.S. Citizens," "AmCits," and so forth. ECF No. 25 at 5. But Stein, who reviewed the search parameters, determined that including these proposed terms "would have been overbroad and would not [have] been reasonably likely to locate 'a list of Department posts that have or had international travel restrictions imposed on U.S. Direct Hire (USDH) personnel . . . .'" Stein Decl. ¶ 5. Again, Welsh points to no evidence of his own to support his contrary conclusion, and "[l]itigation does not . . . give [him] the opportunity to rewrite the request." *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 35 (D.D.C. 2019). The Court otherwise agrees that the State Department's effort was a reasonable approach to find the kind of specific record that Welsh requested.

Finally, after the State Department replied in support of its motion for summary judgment, ECF No. 26, Welsh filed what he labelled as a "cross-reply," ECF No. 27. Welsh never cross-moved for summary judgment, however, such that he could file any cross-reply. The Court construes this filing as a surreply, but Welsh also never moved for or received leave to file one. *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002) ("A party seeking to file a surreply must move the court for leave to file such a surreply."). In any event, because the State Department has not moved to strike this filing, the Court simply notes that none of the arguments Welsh raises bear on his FOIA claim.[2]

\*    \*    \*

Welsh contends "this case—at its core—is fundamentally very simple." ECF No. 27 at 6. The Court agrees, though not for the reasons Welsh offers. This case is about a single FOIA request by Welsh. The State Department has shown the adequacy of its search in response to that request. Welsh has identified no genuine disputes of material fact bearing on that issue. Instead,

---

[2] Welsh first argues that the State Department "deprived [him] of personal liberty and freedom of movement." ECF No. 27 at 2. But the Court has already dismissed Welsh's due process claim for lack of subject-matter jurisdiction. *Welsh*, 2022 WL 343552, at *2–3. So all of that is immaterial to his FOIA claim. Second, Welsh spills much ink about the State Department's alleged "ongoing retaliation" against him. ECF No. 27 at 2–4. But again, none of that has anything to do with his FOIA claim. Finally, Welsh highlights for the Court that he has submitted two more FOIA requests. ECF No. 27 at 5–6. But these new requests—which have not been processed much less litigated—are not the subject of this suit. *See James v. U.S. Secret Serv.*, 725 F. Supp. 2d 207, 209 (D.D.C. 2010) ("The proper vehicle for [the plaintiff's] latest challenge"—about a FOIA request "which was . . . not challenged in the original Complaint"—"is a new complaint."); *Judge Rotenberg Educ. Ctr., Inc. v. U.S. Food & Drug Admin.*, No. 17-cv-02092 (BAH), 2022 WL 16845801, at *2 (D.D.C. Nov. 1, 2022) ("If a party submits a FOIA request and is dissatisfied with the [government's] response, the proper course is to institute a new lawsuit seeking to compel record production, not endlessly supplement existing proceedings that arose out of entirely separate requests.").

11

for the most part, he raises issues that have no bearing on his FOIA claim. Thus, the Court will grant the State Department's motion for summary judgment.

## IV.     Conclusion

For all these reasons, the State Department's motion for summary judgment, ECF No. 23, will be granted. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 8, 2023